IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| XAVIER TORRES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:21-cv-00910 |
| v. | ) | |
| | ) | JUDGE CAMPBELL |
| STEWART COUNTY SCHOOL SYSTEM, *et al.*, | ) | MAGISTRATE JUDGE NEWBERN |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Pending before the Court is a Motion for Summary Judgment filed by Defendants Stewart County School System, Dr. Benjamin Duncan, Tammy Gray, Bryan Saunders, Donna Gillum, Marian Page, and Tracy Watson (collectively, "Defendants"), Plaintiff Xavier Torres' Response, and Defendants' Reply. (Doc. Nos. 49, 51, 52). The parties each filed and responded to statements of undisputed material facts. (Doc. Nos. 49-2, 51-1, 51-2, 53).[1]

For the reasons stated below, Defendants' motion for summary judgment will be **GRANTED**.

I.     BACKGROUND

At all times relevant to the instant action, Plaintiff Xavier Torres was a senior at Stewart County High School. (Def. SOF ¶ 1). Plaintiff is diagnosed as having autism, attention deficit hyperactivity disorder (ADHD), obsessive compulsive disorder (OCD), and major depressive

---

[1] For ease of reference the Court cites Defendants' Statement of Undisputed Material Facts together with Plaintiff's response (Doc. No. 51-1) as "Def. SOF ¶__"; and Plaintiff's Statement of Additional Material Facts together with Defendants' response (Doc. No. 53) as "Pl. SOF ¶__".

disorder (MDD). (*Id*. ¶ 2). He did not have an Individualized Education Plan (IEP) or 504 Plan because his mother refused special education services, but the Stewart County School System (the "School") was on notice of his disabilities. (Pl. SOF ¶ 1; Duncan Dep. at 51; Gray Dep. at 74-75).

This case arises out of an incident between Plaintiff and a female student, Jane Doe, on December 2, 2020. Plaintiff and Jane Doe were playing a "game" that involved each student moving their hand up the other student's thigh to approximately the bottom of the other student's pocket. (Def. SOF ¶¶ 3, 4). Jane Doe reported the incident to the school counselor, Megan Parks. (*Id*. ¶ 5). While in Ms. Parks' office, Jane Doe was "sitting in the fetal position, rocking back and forth, and crying." (*Id*. ¶ 6).

Ms. Parks reported Jane Doe's complaint to the assistant principal, Dr. Tammy Gray. (Def. SOF ¶ 7). Dr. Gray conducted an investigation, during which she interviewed the Plaintiff, Jane Doe, and other students in the class. (*Id*. ¶ 8). The school principal, Dr. Benjamin Duncan, was present during the Plaintiff's interview. (Pl. SOF ¶ 8). Plaintiff admitted that he touched the top of Jane Doe's thigh, and added that he and Jane Doe had been discussing sexual preferences and that he showed her a condom. (*Id*. ¶ 10; Doc. No. 49-12 at PageID# 1420). Dr. Gray stated that, during the initial investigation, Plaintiff did not tell her that Jane Doe had also been running her hand up his thigh. (Gray Dep., Doc. No. 49-8 at 76-79 ("He did not tell me of her doing anything.")).

Following the investigation, on December 8, 2020, Plaintiff and his mother were given written notice that Plaintiff was being placed in the Alternative Learning Center ("ALC") for

"inappropriately touching a female student."[2] (Def. SOF ¶¶ 12, 15). The written notice informed Plaintiff of his right to appeal the decision to the Disciplinary Hearing Authority ("DHA"). (*Id*. ¶ 15).

Plaintiff appealed the School's decision to the DHA and a hearing was held on Friday, December 11, 2020. (Def. SOF ¶¶ 16, 18; Hearing Notes, Doc. No. 49-12 at PageID# 1417-27). While the appeal was pending, Plaintiff opted to stay home rather than attend the ALC. (Pl. SOF at ¶ 31). Although the School initially intended to treat the absences as unexcused, ultimately, they were excused. (Def. SOF at ¶ 17; Pl. SOF at ¶ 32).

At the DHA hearing, the hearing committee heard from Dr. Gray, Dr. Duncan, Plaintiff, Plaintiff's mother, and a counselor Plaintiff brought to advocate and provide testimony on his behalf. (Def. SOF ¶ 21; Hearing Notes, Doc. No. 49-12 at PageID# 1417-27). Plaintiff and his mother learned that the incident was considered a "Title IX incident, sexual harassment." (Hearing Notes, Doc. No. 49-12 at PageID# 1424 ("anytime there is sexual anything, it is Title IX, that is what it is and there is no way around that")).

Dr. Gray recounted her interview with Plaintiff, Jane Doe, and witnesses. (*Id*.). She stated that Jane Doe never told her that she was also touching Plaintiff, nor did Plaintiff provide that information. (*Id*. at PageID# 1421-22). Dr. Gray said the student she interviewed said they did not see anything happening – they just saw that Jane Doe was giving Plaintiff "dirty looks" and then she "just jumped up and ran off." (*Id*. at PageID# 1422, 1427).

---

[2] The ALC is an alternative learning environment for students who are being disciplined or for students who struggle in the classroom. (Def. SOF ¶ 13). Students placed in the ALC continue to receive coursework, grades, and attendance credit). (*Id*. ¶ 14).

3

Dr. Duncan stated that during the investigation at the school, Plaintiff answered direct questions and did not elaborate on his answers. (*Id*. at PageID# 1426). He did, however, elaborate about his conversation with Jane Doe that day. (*Id*.). Plaintiff told Dr. Duncan that he and Jane Doe discussed sexual preferences, that he told her his mom wanted him to carry a condom in case of an emergency, and that he showed her the condom. (*Id*.).

Plaintiff disagreed that Jane Doe jumped up and ran off from the table after the incident. He said she "set [sic] at the table until the bell rang." (*Id*. at PageID# 1423). Plaintiff stated that when he spoke to Dr. Gray at the school, he "did not have a chance to tell [his] side of the story." (*Id*. at PageID# 1420). "She asked me questions and that was it. I did not get to say that I was not the only one; her hand was also on my leg. We had gotten to the same spot and I am the one who stopped it." (*Id*.). Plaintiff disputed some of Dr. Duncan's recollection of his prior statements but admitted that he showed Jane Doe the condom before the leg touching. (*Id*. at PageID# 1426). He said he told Jane Doe the condom was for a "just in case situation," and he didn't think he "would be needing it at school." (*Id*.).

At the conclusion of the hearing, the DHA upheld the School's decision to assign Plaintiff to the ALC. (*Id*. at PageID# 1427; Def. SOF ¶ 22).

The following Monday, December 14, 2020, Plaintiff's mother called the Title IX Coordinator, Tracy Watson, and complained that the [defendants'] investigation and discipline of Plaintiff did not comply with Title IX. (Duarte Dep. 80-81; 83-84). Watson reopened the investigation and told Defendant to return to school the next day. Watson testified that she told Plaintiff to return to school "because [she] reopened the investigation and because [she] reopened the investigation, [she] thought it was only fair that he be in school." (Watson Dep., Doc. No. 49-9 at 104; see also, Title IX Investigation Report, Doc. No. 49-12 at PageID# 1431). Watson

4

explained, "even though the DHA upheld the discipline, students still have a right to come to the director of schools after a DHA. There is another step in that due process if they disagree with the punishment. So because Mom disagreed and because she contacted me, he should go back to school until my investigation is complete." (*Id*. at 107).

Plaintiff returned to school on December 15, 2020. (Def. SOF ¶ 23). That morning, he rode the bus to school. (*Id*. ¶ 24). The bus monitor told him to sit at the front of the bus because she believed he was still assigned to the ALC. (*Id*. ¶ 25).

When Plaintiff returned to school on December 15, 2020, he had missed four days of school. In addition to these full absences, Plaintiff missed several days of nutrition class due to efforts to separate him and Jane Doe. (Torres Dep., Doc. No. 49-13 at 294). At some point following the incident, Plaintiff asked to be removed from nutrition class and he transferred to world history. (Duncan Dep., Doc. No. 49-5 at 24; Torres Dep., Doc. No. 49-11 at 169).

After Plaintiff returned to school, the Title IX coordinator interviewed Plaintiff and Jane Doe again. (Gray Dep., Doc. No. 49-8 at 69-70; Watson Dep., Doc. No. 49-9 at 30-32, 44, 80; Title IX Investigation Report, Doc. No. 49-12 at PageID# 1431). According to interview notes, Jane Doe maintained that Plaintiff had sexually harassed her. (Watson Notes, Doc. No. 49-12 at PageID# 1428-29). However, she also admitted that she had put her hand on Plaintiff's leg and that when she told Plaintiff she was not comfortable with people touching her due to her past trauma, he apologized and stopped. (*Id*.). Witnesses in the room at the time of the incident did not see anything out of the ordinary. (*Id*.). They told the Title IX coordinator that Plaintiff and Jane Doe were "flirting with each other," and were "friendly, smiling, and talking." (*Id*.).

Ultimately, the Title IX coordinator concluded that there were discrepancies between Jane Doe's interview with the Assistant Principle and the interview with the Title IX coordinator. (Title

IX Investigation Rept., Doc No. 49-12 at PageID# 1431). Based on these discrepancies, the Title IX coordinator decided that the incident "would not be considered sexual harassment; however, it would be **considered conduct unbecoming of a student**." (*Id*. (emphasis in original)). She recommended a modification of the decision to assign Plaintiff to the ALC. (Def. SOF ¶ 31).

At the conclusion of the investigation, the Director of Schools, Michael Craig, vacated all disciplinary measures imposed on Plaintiff for the December 2, 2020 incident. (Def. SOF ¶ 32). Plaintiff never spent any time at the ALC. (*Id*. ¶ 33).

Plaintiff claims the investigation and Defendants' failure to keep the investigation confidential harmed his reputation and mental health. (Torres Dep., Doc. No. 49-13 at 300-01). He says students called him a rapist, reported him for sexual behavior, and one young woman ended her friendship with him. (Pl. SOF ¶¶ 77-81). He also claims the investigation resulted in him receiving a failing grade in nutrition and losing scholarship opportunities.[3] (*Id*. ¶ 74).

Plaintiff brings claims against the Stewart County Board of Education, the principal and vice principal of the school, Dr. Benjamin Duncan and Dr. Tammy Gray, three members of the Disciplinary Committee, Bryan Saunders, Donna Gillum, and Marian Page, and the Title IX coordinator, Tracy Watson. (Am. Compl., Doc. No. 25) for violations of his Fourteenth Amendment right to due process (Count I). He brings separate claims against the Stuart County Board of Education for violation of § 504 of the Rehabilitation Act (Count II) and negligence (Count III).

---

[3] Defendants say he failed nutrition because he never completed the assignments despite having an entire extra semester to do so. (Torres Dep., Doc. No. 49-12, Ex. 16; Cunningham Dep., Doc. No. 49-4 at 22, Ex. 1).

## II.     STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's claims. *Id.*

In evaluating a motion for summary judgment, the Court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence from which the jury could reasonably find for the nonmoving party. *Rodgers* 344 F.3d at 595.

### III.     ANALYSIS

**A. Due Process**

The Fourteenth Amendment forbids the State from depriving any person of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. Plaintiff argues that he was denied a constitutional right in violation of the Due Process Clause of the Fourteenth Amendment because Defendants failed to follow the procedures set forth in Title IX for sexual harassment investigations. (Doc. No. 51 at 10-11). Plaintiff contends Title IX provides the "guideposts of what Defendants should have done in order to respect Plaintiff's due process rights." (*Id*. at 13). In particular, Plaintiff argues that he did not know he was "under investigation" until he received the notice advising him he was being placed at the ALC, and that, at the DHA hearing, he was not informed of his right to representation, was not provided with the allegations and the additional evidence to be used against him, and was not afforded the opportunity to cross examine witnesses. (*Id*. at 14).

Defendants argue there is no private right of action for procedural violations of Title IX and that Plaintiff's allegations of procedural violations of Title IX are not cognizable as a claim under the Fourteenth Amendment. (Doc. No. 49-1). Defendants assert Plaintiff was provided with adequate due process under *Goss v. Lopez*, 419 U.S. 565 (1975), and *Buchanan v. City of Bolivar*, 99 F.3d 1352 (6th Cir. 1996).

In *Goss*, the Supreme Court held that students facing ten-day suspensions from public school were entitled to protection under the Due Process clause. *Goss*, 419 U.S. at 576. "[I]n connection with a suspension of 10 days or less," the Due Process Clause requires "that the student

8

Case 3:21-cv-00910   Document 60   Filed 09/28/23   Page 8 of 14 PageID #: 2843

be given oral or written notice of the charges against him, and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id*. at 581. "There need be no delay between the time 'notice' is given and the time of the hearing. In the great majority of cases, the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred." *Id*. The Supreme Court held that "in being given an opportunity to explain his version of the facts at this discussion, the student first be told what he is accused of doing and what the basis of the accusation is." *Id*. at 582. The Sixth Circuit summarized, "once school administrators tell a student what they heard or saw, ask why they heard or saw it, and allow a brief response, a student has received all the process that the Fourteenth Amendment demands." *Buchanan*, 99 F.3d at 1359 (quoting *C.B. v. Driscoll*, 83 F.3d 383, 386 (11th Cir. 1996)).

In *Buchanan*, the Sixth Circuit considered a case where the plaintiff was not suspended, but ordered to attend an alternative school. *Id*. The court suggested that "absent some showing that the education received at the alternative school is significantly different from or inferior to that received at his regular public school," the transfer may not even implicate the Due Process Clause. *Id*.

Plaintiff argues Defendants violated his due process rights because he was disciplined before the Title IX process was complete. (Doc. No. 51 at 17-18). Plaintiff appears to suggest that the procedural requirements of Title IX set the "floor" for constitutional procedural due process in sexual harassment investigations – equating a procedural violation of Title IX with a deprivation of due process under the Constitution. (*Id*. at 18). Plaintiff points to no case law in support of this proposition, and his attempt to transform statutory procedure into a constitutional requirement is unavailing.

9

Construing the facts in the light most favorable to the Plaintiff, he was "suspended" for four school days.[4] Because the suspension was less than ten days, the court considers whether Plaintiff was afforded due process as outlined in *Goss*. The undisputed evidence show that Plaintiff was notified of the charges against him. True, it was not a formal written notice, but *Gross* does not require such formality, particularly for a suspension of this length. Plaintiff was notified that Jane Doe accused him of touching her leg in a particular way, and he was given the opportunity to respond to the accusation. Plaintiff confirmed that he had indeed touched her leg and provided additional information about their interaction – that they had discussed sexual preferences and that he showed her a condom. Under these circumstances, Plaintiff's contention that he was not given an opportunity to tell his side of the story is untenable.

In summary, Plaintiff was provided notice of the accusation and an opportunity to respond. This is all that due process demands under these circumstances. *See Goss*, 419 U.S. at 581. The Court observes, however, that the process afforded Plaintiff did not end with initial inquiry and resulting suspension. Plaintiff received a formal hearing before the DHA. Although the DHA upheld his placement at the ALC, Plaintiff was ultimately allowed to return to school, the investigation was reopened, the charges were reevaluated by the Title IX investigator, and all disciplinary measures were vacated.

Because Defendants did not violate Plaintiff's right to due process under the Fourteenth Amendment, judgment on this claim will enter in favor of Defendants.

---

[4] Defendant was assigned to attend the Alternative Learning Center beginning December 9, 2020, but he opted not attend. He was absent from school on December 9, 10, 11, and 14, 2020. He returned to school on December 15, 2020. (Def. SOF ¶¶ 17, 23).

### B. Section 504 of the Rehabilitation Act

The Rehabilitation Act provides in Section 504 that "[n]o otherwise qualified individual with a disability in the United States … shall solely by reason of his or her disability, be excluded from the participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. 794(a). To establish a Section 504 claim, Plaintiff must establish he was "subject to discrimination 'by reason' of his disability." *Li v. Revere Local Sch. Dist.*, No. 21-3422, 2023 WL 3302062 at *12 (6th Cir. May 8, 2023) (citing *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008)). In the educational context, this requires a showing of "bad faith or gross misjudgment." *Id*. (citing *G.C. v. Owensboro Pub. Schs.*, 711 F.3d 623, 635 (6th Cir. 2013) (stating that "at least in the context of education of handicapped children" establishing a Section 504 violation requires a showing of "bad faith or gross misjudgment")).

Plaintiff claims the School discriminated against him based on his disabilities by failing to conduct a "manifestation determination" to consider if his violation of the student code of conduct was caused by or had a direct and substantial relationship to his disabilities.[5]

Defendant argues Plaintiff cannot establish that he was discriminated against on the basis of his disability based on the failure to conduct a manifestation determination because, given the minimal time Plaintiff was actually out of school, a manifestation determination was not required.[6] (Doc. No. 49-1 at 22). Defendant contends a manifestation determination is only required if the

---

[5] The claim for disability discrimination is brought only against the Stewart County Board of Education. (*See* Am. Compl., Doc. No. 25 at ¶¶ 131-141).

[6] Defendants also contend Plaintiff's Rehabilitation Act claim is subject to the exhaustion requirements of the Individuals with Disabilities Education Act ("IDEA"), 29 U.S.C. § 1415(l). Because the Court finds other grounds dispositive, it does not reach the issue of exhaustion.

school implements a "significant change in placement" – *i.e.*, removal from class or school for longer than 10 consecutive school days. (Doc. No. 49-1 at 22 (citing United States Dept. of Ed. Office for Civil Rights Section 504 Discipline Fact Sheet, Doc. No. 49-3) (citing 34 C.F.R. §§ 104.33, 104.35, 104.36)). Defendant argues that no manifestation determination was required here because Plaintiff only missed four days of school, never "served time" in the ALC, and did not receive any other discipline as a result of the incident. (*Id.*).

In response, Plaintiff argues that he was initially assigned to the ALC for 112 days. (Doc. No. 51 at 21). But he provides no legal authority to show that the assignment, which was never implemented or, at most, implemented for four days, requires a manifestation determination, particularly where any record of this discipline was removed from his record. Plaintiff has provided no evidence to support the charge of disability discrimination. Accordingly, judgment will enter in favor of Defendant on this claim.

## C. Negligence

Plaintiff's negligence claim against the School is based on an alleged failure to keep Jane Doe's sexual harassment complaint against Plaintiff confidential.[7] (Am. Compl., Doc. No. 25 at ¶¶ 143-144). Specifically, Plaintiff contends Defendants Gray and Duncan allowed subordinate employees to reveal confidential information to the public and failed to instruct Jane Doe to keep her accusations confidential. (*Id.*). Plaintiff claims this resulted in reputational harm and emotional distress. (*Id.* at ¶ 145).

---

[7] Plaintiff asserts the negligence claim (Count 3) only against the Stewart County Board of Education. (Am. Compl., Doc. No. 25 at ¶¶ 142-49).

A claim of negligence requires Plaintiff to establish: (1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) legal cause. *Giggers v. Memphis Housing Auth.*, 277 S.W. 3d 359 (Tenn. 2009).

Defendant argues Plaintiff has failed to put forth any probative evidence that Defendants Gray and Duncan allowed subordinate employees to publicly reveal confidential information, that they failed to instruct Jane Doe to keep her allegations confidential, or that the alleged breach of confidentiality was the cause of harm to the Defendant.[8] (*Id.* at 29-30). Defendant points to testimony showing that Duncan and Gray took measures to protect the confidentiality of the investigation. Dr. Gray testified that when she interviewed student witnesses, she did not mention the Plaintiff or Jane Doe by name and did not disclose the reason for the interviews. (Gray Dep., Doc. No. 49-8 at 50-51). Dr. Duncan testified that the administration took measure to protect the confidentiality of students. (Duncan Dep., Doc. No. 49-5 at 48-49). Finally, although the bus monitor was aware that Plaintiff had been assigned to the ALC, she did not know the reason for the placement. (Torres Dep., Doc. No. 49-11 at 156-60).

Defendant asserts there is no evidence any employees revealed confidential information about the Title IX investigation. Defendant argues there are a multitude of ways students could have learned about the subject of the investigation, including from the Plaintiff and his mother. (Doc. No. 49-1). In fact, Plaintiff admitted he discussed the incident with his friends at school.

---

[8] The Stewart County Board of Education asserts that it is immune from suit under the Tennessee Constitution and the Tennessee Governmental Tort Liability Act. (Doc. No. 49-1 at 26-28). Because the Court finds the merits of the negligence claim dispositive, the Court does not reach Defendant's assertion of immunity.

13

Case 3:21-cv-00910    Document 60    Filed 09/28/23    Page 13 of 14 PageID #: 2848

(*See* Torres Dep., Doc. No. 49-11 at 160-62), and Plaintiff's mother discussed the Title IX investigation on Facebook, in the news, and in other public fora. (*See* Torres Dep., Doc. No. 49-12, ex. 18).

Plaintiff responds that "Duncan and Gray knew or should have known students would gossip about the allegations against Plaintiff and his absence. They violated their duty to Plaintiff by failing to effectively control the reputational harms that were circling around the school." (Doc. No. 51 at 22). Other than the fact that students apparently learned something about the subject of the investigation, Plaintiff points to no evidence that this information was revealed by School employees.

Because Plaintiff fails to identify any evidence from which a reasonable jury could conclude that he suffered reputational harm due to a breach of confidence on the part of School employees, Defendant's motion for summary judgment on this claim will be granted.

### IV. CONCLUSION

For the reasons stated, Defendants' Motion for Summary Judgment (Doc. No. 49) will be **GRANTED** on all claims.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE